Your Honor, may I have one? Okay. Argument is concluded, Counsel. Thank you. Next case is John Grace, if that's the proper pronunciation, v. Secretary of Veterans Affairs, 2017-1562. My Counsel is ready. Mr. Sybil. Thank you, Your Honor. May it please the Court. I'm Joshua Sybil. I represent the veteran appellant in this case, Mr. John Grace. Mr. Sybil has two issues, two main issues. First, the duty to assist requires the VA to make all possible efforts to obtain relevant records, including reserve records and post-service records. Second, fundamental fairness requires that the appealing veterans be allowed to reply to arguments raised by the Secretary's brief. The decision of the Veterans Court below is wrong on both accounts, and it should be reversed. The Court did cite the wrong standard, and apparently it's been doing that a lot. But where in the record do you believe you can establish that they actually applied the wrong standard? In two places, Your Honor. And we'll get to this in much more detail, but I'll just preview them now. The first one is applying the adequately identified standard in an incorrect manner to the adequately identified standard only applies to private treatment records and non-VA government records. And there's a line in the Veterans Court's decision that says the Secretary is correct that the veteran did not adequately identify VA records, and the statute does not require that. The second one is that the Veterans Court imposed an active duty requirement on triggering the duty to assist in obtaining reserve records and post-service records, and that requirement is not contained in the statute either. As to the first, I agree that the Court was wrong as to what the standard is. Again, my question is, is it clear that they actually applied the wrong standard? Your Honor, this occurred during the Court's analysis of whether the duty to assist had been satisfied by the VA, and it found that the VA had satisfied it, applying that incorrect standard. So I think in the context of a Court's legal analysis, if it quotes the wrong standard and applies it to facts that it shouldn't have, that is necessarily misinterpreting and misapplying the law, and applying it to the facts of the case is inherent in the analysis. So what would you want us to do, vacate and remand for them to apply the correct standard? That's exactly what we'd like, yes. How did the Court not apply the correct standard? What happened? The Court, in looking at whether the Veterans Administration correctly had satisfied its duty to assist, we argued that the VA did not do so because it didn't obtain and consider his reserve records or post-service records. But he has to indicate records that should be obtained, doesn't he? Actually, no, Your Honor, that's the whole issue here. Section 5103A imposes no obligation on Veterans for certain categories of documents. That includes service records, that includes reserve service records, and then it goes up from there. Then there's a slight standard, a slight obligation of identification, but it doesn't arise for identification for VA records. It's only providing information sufficient for the VA to identify. So the Veteran himself does not have to identify the VA's own records. He only has to provide information sufficient for the VA to do that itself. But he didn't do that. I believe he did. I think we make the argument below that he did. In any event, that's a question of fact. That is a question of fact that we think will be determined correct, was determined incorrectly because the Court misinterpreted the law. If the Court misinterprets the law and gets the facts wrong, just because the Court gets the facts wrong doesn't destroy jurisdiction. Jurisdiction is only destroyed if the only issue is the determination of fact. If the Court applied the correct standard and got the answer wrong, then I would agree that there's no jurisdiction. How are the reserve records relevant? There is a relevance requirement, correct? Well, that's funny you ask that, Your Honor. In preparing for this argument, I came across some cases where they seem to say that there is no relevance requirement, but I will concede for the sake of this argument. Well, it's in every portion of the statute. I understand that, Your Honor. And I didn't cite it in the briefing, so I won't raise it up here, but I will concede that there is a relevance requirement. But this Court in Moore also held that the VA cannot refuse to obtain records based on a prejudgment of relevance without obtaining them just based on the timing alone. Right, so the relevance determination has to be made once the records are obtained. That's what appears to be what this Court's holding in Moore was, and that's what we think the Court should do below. I would like to ask the Court if you'd like me to address the jurisdictional issue before we proceed. But what would make them relevant, even if they had to obtain them, assuming they did? Oh, well, just one example that we had mentioned in our briefing below. Mr. Gerace's injuries are degenerative in nature. He had discreet incidents during his active service and for which he claims he received treatment, but those have worsened over the years, and it's possible that he received some sort of medical examination where this would have come to light during his reserve service or during a post-service checkup. His active service records don't even back up his claim that these events occurred. That is true, Your Honor, and that's why we argued that there's only two pages. Doesn't that finding alone trump everything else? Not at all, Your Honor, because there's evidence to the contrary. There's evidence from private physicians that corroborate Mr. Gerace's account of the facts. Those are based on his claims alone. The Board here looked at the actual active service records and said there's nothing here that shows us that these events ever occurred. That's true, and so I have two things to say about that. The first is that there are only two pages of what's called sick call treatment records in some scores of service records. There's only two pages of treatment records for his entire active service, which leads us to believe that there may be some missing. Now, that may or may not be the case, but we think the VA should follow up on that. Also, the second point on that is if there isn't enough evidence to decide the claim, Section 5103A requires the VA to order a medical examination, and that's another point that we think gets into our reply brief issue. But the Board incorrectly used its own medical judgment to determine that they did not need to order a medical examination because, in their opinion, if these injuries had actually occurred That's the issue that's subject to the waiver argument. Is that correct? That concerns the waiver argument, yes, Your Honor. I'm happy to turn to that now if the Court would like to hear about that. Let me just ask one. If he was on standby reserves during that time frame, wouldn't any medical records be in the hands of a private physician as opposed to the government? Your Honor, I don't know the answer to that question. There may be records arising from some VA treatment or from some service during his reserve time. We just don't know. That's the problem. As we pointed out in our brief, the Veterans Court seems to think that the fact that they don't know, that absolves them of the duty to follow up. But the veteran's not arguing that this happened during any type of reserve status. He's arguing this happened during active service. Your Honor, we think that's the exact misunderstanding that the Veterans Court made. They said he didn't. He's claiming it happened during active service, and that's all we have to look at. But that's just not the standard. The VA has to obtain all relevant records, and there's no active duty requirement. That's the point. At that point, if they make a finding that the records don't indicate that these events ever occurred, how would reserve records that are made years later outweigh that? Well, as I said to Judge O'Malley, it's quite possible, especially in the context of the degenerative symptoms that Mr. Gerase has, that he was a young man during his active duty. He said that he wanted to tough it out when these things happened. They may not have appeared in the record, but as he aged during reserve service, maybe he was visiting VA doctors. We don't know the situation, but it's possible that some of his symptoms did get recorded in the records, and those records have not been obtained. He claims that he got medical treatment when he was hung over the ship. Yes, that's correct. That's correct. And then also when the life support crushed his foot. He says he went and got medical help. That's absolutely right, Your Honor. He says he received medical treatment. He sought out help, and for some reason it does not appear in the record. And that's a credibility determination that we can't review. I'm not asking the court. We're not asking the court to review the factual determination. We're asking the court to instruct the Veterans Court to apply the correct standard for all of these discrete issues. The adequately identified standard was improperly interpreted. There is no active duty requirement for relevance. Relevance should not be prejudged based on timing of the facts, just as this court has instructed and more. So we're not asking, well, we're not saying that the court took the correct law and got the wrong result, and therefore we want this court to fix it. We're saying that the Veterans Court misinterpreted the law, applied it incorrectly, and therefore got the wrong result. And we think when this court instructs the Veterans Court to fix its misinterpretation, that it will get the correct result. We're not asking this court to do that factual determination. I'd like to spend the last few minutes of my time discussing this reply brief issue. The Veterans Court's own rules and this court's precedent require that appealing veterans be given the opportunity to reply to arguments raised in the Secretary's brief. 38, excuse me. Veterans Court Rule 28C. The Veterans Court's Rule 28C permits an appellant to file a brief in reply to the Secretary's brief, and this court held in Network v. Central that when an issue is raised for the first time in the appellee's brief, fundamental fairness requires that the appellant be given an opportunity to respond. In his opening brief at the Veterans Court, Mr. Drace argued that the VA, the board, should have ordered a medical examination to determine the etiologies and the symptoms of his claim. In response to that, on page 15 of the Secretary's brief, that's Appendix 79, the Secretary argued that the board did not have to do that because in its opinion, if those injuries had actually occurred, they would have been recorded. That argument opened the door for Mr. Drace to step through and reply as the Veterans Court's rules and this court's precedent entitles him. So I think it's fairly straightforward here. We raised an issue. The Secretary tried to rebut that issue, making an argument about medical judgment, and Mr. Drace is entitled to reply to that. Now, is a finding whether or not an occurrence took place during active service, is that a medical opinion? I'm sorry, Your Honor, I did not understand the question. Is a finding whether an occurrence actually took place, the event itself actually took place during active service, are you saying that that's a medical opinion? No, that is the conclusion, but there's a specific medical judgment that underpins that conclusion, and that is that the types of injuries that are complained of would have been recorded had they occurred, and there's detailed case law in our briefing below analyzing why that, in this particular case, that was an incorrect medical judgment because in certain cases the board can do that, but in this case it cannot. It depends on the type of injuries complained of. For example, if there's a compound fracture, then it's reasonable for the board to say, yeah, that would have appeared if it had actually occurred, but in cases like this where there's internal injuries, where there's injuries to joints and not to compound fractures and things like that, the case law does not allow the board to make that subjective medical judgment without independent medical opinions from independent parties. Mr. Sibley, you wanted to say something? Yes, thank you, Your Honor. Ms. Burbank. May it please the Court. I'd like to first start with the standard that the Court articulated in its decision. On page 13 of the appendix, the Veterans Court correctly states that service medical records do not require identification by the... Did the government err or mistakenly cite the wrong statute? The final decision, no, it does not, Your Honor. But it did at once. In the initial decision, which... But why is that? That seems to happen quite often. There are certainly... And in the 28J letter that Mr. Guras submitted, there is a repeated paragraph that has this incorrect quotation. That doesn't necessarily mean that the incorrect standard is applied. It's just a missing word in a quotation. Why shouldn't we send it back so the Veterans Court understands that they can't keep doing this? They can't apply an outdated regulation. Well, the issue here is that there was a motion for reconsideration, which was granted. And so the decision on review here doesn't include that error. The appendix at 13 correctly notes the standard. And then on pages 14 and 15 of the appendix, there's a discussion. And very specifically, the Veterans Court discusses the adequately identified requirement for private treatment records. It also talks about identification for VA records, which is required that there must be some information sufficient to locate the records, but does not apply that standard for service records. And that's what's at issue here. But is it your position that service records do not include reserve service records? That is not our position, Your Honor. The issue here is a factual one, which is that the board below, and this is at appendix 43, specifically finds that the service medical records are complete. That includes the reserve records, which on page 40, excuse me, 21 of the supplemental appendix, this is part of the chronological record of care. There's several pages of discussion from 55 to 57. And then there's also in this chronological record of medical care a notation of his discharge. There's no indication that any records are missing, any medical records are missing from that reserve service period. It is the VA's practice and it is the Navy's practice at this time prior to 1994, all service records, reserve records as well as active records, currently they're sent somewhere else, but pre-1994, they were all sent to the National Personnel Records Center. And that's where these records were obtained. So all of the records are there. And as noted on pages 2 and 3 of the supplemental appendix, there's no active service during the period of reserve service. And that's what the Veterans Court discusses, that there's no training, there's no active duty training during that reserve service duty. There's nothing that would indicate in the record from his DD-214, from the medical records, or even from his own statements before the VA, to say that there would be any medical records missing from that reserve service. As Your Honor questioned... So is it your position that they looked for reserve records and couldn't find them, or that they decided that they didn't have to look? Your Honor, the board determined that the service medical records were complete, that what was sent from the National Personnel Records Center included all of his medical records. And on page 15 of the appendix, the Veterans Court notes that if there's an error in the record somehow, that there was a period of active service or there was something that wasn't recorded, it can't correct that. But the full record for both his service record and his reserve service and his active service duty comprise service medical records that are complete. And that's what the board finds. That's a factual finding. That seems a little circular. So you're saying we got stuff, and it didn't have anything in there, so we determine it's complete, but we don't go back and inquire. Well, it doesn't go back and inquire, because there's no evidence on the record to indicate that it's incomplete. It doesn't cut off at 1957. There is notation of the 1963 discharge. There's evidence that says there's no period of active service, as Your Honor mentioned before. If one is in reserve service. So if it's not in active service, would medical records during that period be irrelevant? That is. I mean, couldn't they be relevant to this question of degeneration? They could be relevant in certain circumstances, Your Honor, yes. But I do want to note that counsel suggested that there's no relevance requirement and that, in fact, the VA must go and get all records to determine if they're relevant, and that's not this Court's ruling. In Goals v. Shinseki, which postdates more, the Court has explained that, in fact, the relevance standard, which is stated explicitly in the statute, is meaningful and does not mean that the VA must go get records to determine whether they are relevant. In certain circumstances, it can determine that they're not relevant. But that's not what the Veterans Court did here. What we're dealing with is a factual finding that the records are complete, because the service records are complete, because during the period of a standby reserve duty without any period of active duty, either training or otherwise, one would not necessarily expect any service medical records to exist. One would expect private treatment records to be applicable during that period, but not service records or perhaps VA records. Again, it seems so circular. So you're saying you concede there's no burden on the Veteran with respect to service records, but then you're saying we just assume they were complete because we wouldn't necessarily expect it. No, Your Honor. It's not an assumption that it's complete, but rather that there is an expectation that when the records purport to be complete, there's no evidence that they're incomplete. There's no evidence on the record suggesting that there was any service medical record missing that the VA, and this is in accordance with the statute and in accordance with its regulations, that when the VA concludes that the records are complete, it doesn't have to continue looking for records just because there's an allegation that perhaps maybe there might be something missing. It's making a factual finding that they're complete, and that's something this Court can't review. That's a factual determination. And it's not requiring an identification by the... This is not under an adequately identified standard, but rather a determination of whether these records are complete. And here, given the evidence below, the Board looked at these records, saw that there were, at more than two pages, there's approximately 50 pages of medical records, which is in the supplemental appendix, mostly spanning from 1955 to 1957 for his period of active service, but there are notations about his discharge from reserve duty. So again, there's no indication that they were truncated or that there was something missing. They covered that whole period. And so they are complete, and that's what the Board determined as a factual matter, and that's what the Veterans Court was reviewing. It did not apply an incorrect standard for service records. It specifically broke out the service record question different from the identification requirement for private treatment records and for VA records. With respect to... Excuse me. With respect to the reply brief issue, this court has found that the Veterans Court has broad discretion to apply its rules of practice. And to the extent that claimant appellant is arguing that the court should have applied its discretion differently and should have come up with a different determination of whether this was a new issue or not, that is, again, a factual issue or an application of fact to law that would be outside this court's jurisdiction. But to the extent Mr. Guras is arguing that the whole rule of requiring a reply brief or requiring issues to be raised in the first instance in the opening brief rather than in the reply brief, Carbino is controlling here that the general rule is one that the Veterans Court has the authority to impose and has the discretion to apply on a case-by-case basis. The issue of whether this was sufficiently different or sufficiently linked to the VA's brief is, again, something that is a factual determination or an application of fact to law. But if we were to discuss that, if we were to look at that application of the Veterans Court's discretion there, the way that the Veterans Court viewed this new issue was that what happened in the opening brief, the claimant argued that there was sufficient evidence that there may be a nexus, a nexus between an in-service event and his present condition. And so the issue was this nexus. And in response, the VA said, well, no, there isn't enough there, even with your private treatment records, because there's no evidence of an in-service event. That was in response to this nexus question and wasn't about a medical determination, wasn't about this issue from Kahana. All of these issues were newly raised in its reply brief. And the Veterans Court acted well within its discretion to say that's a new issue, and that's something that we're not going to consider, just as this Court can apply its discretion in determining whether a reply brief is raising a new issue and might not consider a new issue on reply. And that is outside the context of the pro-veteran canon of statutory construction. When we're talking about applying this rule for reply briefs, that discretion is one, again, that is explicitly permitted in Carbino, and that is well within the statutory language, which says that the Veterans Court can make rules of practice. That doesn't mean that every single instance of application of its discretion will be one that ends up in the veterans' favor, sometimes just as with other issues of the Veterans Court discretion in applying its rules of practice in the interest of fairness, in the interest of finality. Sometimes that means that the veteran can't make new claims. Unless the Court has further questions, we respectfully request that the Court dismiss the first issue for lack of jurisdiction and to the extent Mr. Goroshki is arguing for overturning Carbino, we ask that this Court affirm. Thank you, counsel. Mr. Stivel has a little rebuttal time left. Thank you, Your Honor. A couple points in rebuttal here on the reply brief issue specifically. First point, the counsel is now arguing for the first time to this Court that it doesn't have jurisdiction to hear the reply brief issue. We didn't see that in the briefing below. It should be waived. But even regardless of that point, I think the Court clearly does have jurisdiction to decide the issue. It's a question of the Veterans Court's interpretations of its own procedural rules and of this Court's precedent. The misunderstanding, the misinterpretation by the Veterans Court is this. It seems to think, if you read the footnote, that any issue not expressly laid out in the opening brief can't be mentioned in the reply brief. But that's not what the general rule of reply briefs is and it's not the specific rule of Carbino. Carbino specifically adds a qualifier that you can't raise an issue in the reply that hasn't been considered by the Secretary, hasn't been considered in the Secretary's brief. That happened here and that's why the reply brief argument should be considered. Finally, this idea that the pro-veteran canon doesn't apply here. The pro-veteran canon applies universally to veterans' law. Congress established judicial review of veterans' claims to make sure that incorrectly denied appeals were granted. Improperly denied claims for benefits were granted and the only way for the Veterans Court to do that, to live up to its obligation, is to listen to veterans' arguments. Thank you. Thank you, Counsel. We'll take the case under advisement. All rise.